UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BETH CHILDS,<br><br>        Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. CV 04-04280 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are undisputed and are summarized in the Joint Stipulation. [See JS 2]. Plaintiff contends that Administrative Law Judge Zane A. Lang (the "ALJ") improperly evaluated the credibility of her "excess pain" complaints, and therefore that the ALJ erred in finding that plaintiff retains the residual functional capacity ("RFC") to perform alternative work available in significant numbers in the

national economy. [See JS 2-3; Administrative Record ("AR") 27-28].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**"Excess pain" complaints**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting the alleged severity of her subjective complaints.

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Moisa, 367 F.3d at 885

1 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective
2 testimony of claimant without providing "clear and convincing reasons").  The ALJ's credibility
3 findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected
4 the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's
5 testimony." Moisa, 367 F.3d at 885.  If the ALJ's interpretation of the claimant's testimony is
6 reasonable and is supported by substantial evidence, it is not the court's role to "second-guess"
7 it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

8      In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence
9 presented," including the following factors:  (1) the claimant's daily activities; (2) the location,
10 duration, frequency, and intensity of pain and other symptoms; (3) precipitating and
11 aggravating factors, such as movement, activity, and environmental conditions; (4) the type,
12 dosage, effectiveness and adverse side effects of any pain medication; (5) treatment, other than
13 medication, for relief of pain or other symptoms; (6) any other measures used by the claimant
14 to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional
15 restrictions due to such symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also
16 Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's
17 policy regarding the evaluation of pain and other symptoms).  The ALJ also may employ
18 "ordinary techniques of credibility evaluation," considering such factors as (8) the claimant's
19 reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the
20 claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant
21 regarding matters other than the claimant's subjective symptoms; (11) the claimant's work
22 record; and (12) information from physicians, relatives, or friends concerning the nature,
23 severity, and effect of the claimant's symptoms. See Light v. Social Sec. Admin., 119 F.3d 789,
24 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

25      During the hearing, plaintiff testified that she could not work due to pain in her back,
26 neck, arms, hands, and legs.  She said that her doctors told her the pain was from "arthritis,"
27 and she said that her back was the source of her discomfort. [AR 212].  In particular, plaintiff
28 mentioned problems with pain and numbness in her right shoulder and left arm and hand. [AR

212-213]. Plaintiff testified that her arms went "numb all the time." [AR 213]. She was able to shower using a shower chair and dress herself. [AR 213]. She lived by herself but testified that relatives checked on her often and helped her once or twice a week with shopping, dishwashing, and laundry. Plaintiff said that she did mostly microwave cooking. [AR 213-214]. Plaintiff drove herself to doctors' appointments. Plaintiff testified that her workers' compensation treating orthopedist, Dr. Hunt, offered her surgery, but her pain management specialists told her that they didn't think surgery would "correct my problems, so I refused." [AR 207, 215]. In addition, the workers' compensation insurer declined to authorize the recommended surgery. [AR 216]. Plaintiff said she underwent physical therapy for about 10 months and "[i]t made the pain worse." [AR 216]. She received a total workers' compensation claim settlement of $30,000, before payment of attorneys' fees. [AR 206]. After her workers' compensation treatment was concluded in April 2002, she sought treatment once at Los Angeles County Harbor UCLA Medical Center and was referred to a free clinic, where she had been seen every three or four months. Doctors there prescribed Ultram (a painkiller), Neurontin (for nerve pain), and Protonix (for symptoms of gastroesophageal reflux disease). [AR 216-217]. Plaintiff testified that Ultram "helps for a while, but it keeps me out of my head. I can't, I can't function when I take that pill." [AR 217]. Plaintiff took Ultram "[o]nly when I have to, maybe twice a week." [AR 218]. Plaintiff took Neurontin daily because her doctor said that by doing so she would eventually feel a difference, but plaintiff said that so far she had not, and she took Protonix daily. [AR 218].

The ALJ gave the following reasons for rejecting the credibility of plaintiff's testimony about her subjective symptoms and limitations. First, the ALJ said that plaintiff's subjective complaints were "unsupported by objective medical evidence." [AR 25]. In view of the numerous positive examination, x-ray, and MRI findings reported by plaintiff's treating orthopedist, Dr. Hunt, the ALJ's conclusion is not self-explanatory, nor did he explain how the objective findings failed to corroborate plaintiff's subjective complaints. In Dr. Hunt's initial report, for example, his findings included positive cervical foraminal compression test, positive Spurling's test in the

right upper extremity,[1] restricted range of cervical-thoracic spine motion, positive Hawkin's test in the left shoulder,[2] positive Neer's test in the left shoulder,[3] restricted forward flexion of the right shoulder, positive Tinel's sign at the right wrist,[4] positive Phalen's test in the right hand,[5] reduced thenar (thumb) strength in the right hand, reduced range of wrist motion, decreased sensation to pinprick and light touch in the entire right upper extremity and over the lateral aspect of the right thigh and right calf and the dorsal aspect of the right foot, reduced motor strength on the right, antalgic gait referenced to low back and right buttock pain,[6] diffuse tenderness to palpation over the lumbar spine and bilateral buttocks, pain at extremes of lumbar range of motion, pain on heel walking, positive sitting and supine straight leg raising test on the right,[7] loss of normal cervical spine lordosis on x-ray, mild degenerative thoracic and lumbosacral spine changes on x-ray, abnormal nerve conduction velocity studies consistent with moderate bilateral carpal tunnel syndrome, and MRI reports showing, among other things,

---

[1] A positive cervical foraminal compression test and a positive Spurling's test both are indicative of cervical spinal nerve root inflammation (radiculitis). Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d ("Medical Deskbook 3d") § 11:2 (2004).

[2] A positive Hawkin's test is significant for shoulder impingement syndrome or rotator cuff tendonitis. Medical Deskbook 3d § 11:2.

[3] A positive Neer's sign is significant for subacromial impingement of the rotator cuff tendons in the shoulder. Medical Deskbook 3d § 11:2.

[4] A positive Tinel's sign is significant for peripheral nerve injury due to trauma, compression, and similar conditions, and is commonly used in the diagnosis of carpal tunnel syndrome. Medical Deskbook 3d § 11:2.

[5] A positive Phalen's test is significant for carpal tunnel syndrome. Medical Deskbook 3d § 11:2.

[6] Stedman's Medical Dictionary gait (27th ed. 2000).

[7] A positive supine and sitting straight leg raising test, also known as Lasegue test, is indicative of compression of the L4-L5 or L5-S1 spinal nerve roots, as with intervertebral disc rupture on the same side as the pain. Medical Deskbook 3d § 11:2.

cervical and lumbar spine disc bulges, minimal central canal stenosis, and subcoracoid bursitis on the right shoulder. [See AR 131-155]. Dr. Hunt's interim and final reports reflect many similar findings. [See AR 105-130]. The medical records also corroborate plaintiff's testimony about adverse effects from her medications. [See AR 136 (plaintiff reported being allergic to aspirin, penicillin, and novocaine, and stated that Vioxx, Celebrex, methocarbamol, Ultram, and Mobic cause gastrointestinal problems, blurred vision, and headaches); AR 170 (noting that plaintiff complained of adverse effects from Vioxx, Motrin, and Ultram)].

This, then, is not a case where the objective findings are sparse or minimal, or where the objective findings affirmatively suggest exaggerated or unreliable subjective complaints. Cf. Osenbrock, 240 F.3d at 1166 (holding that the ALJ provided clear and convincing reasons for his rejecting the claimant's subjective symptoms where the neurological and orthopedic evaluations have revealed very little evidence of significant abnormality of the extremities or spine, and the physical examination revealed a positive Waddell's sign and inconsistent physical findings which suggested that the claimant was highly unreliable). On this record, the ALJ's conclusory assertion that the objective findings do not corroborate plaintiff's subjective complaints is not specific enough to allow the court to evaluate whether or not that assertion is supported by substantial evidence. See Moisa, 367 F.3d at 885 ("If the ALJ finds the claimant's pain testimony not to be credible, the ALJ must specifically make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.")(internal quotation marks and alterations omitted).

The ALJ also found that plaintiff's
> decision to decline treatments betrays her numerous complaints. She was repeatedly advised to undergo epidural injections and acupuncture therapy but she refused every time. She seemingly was more concerned with the lien placed against her rather tan obtaining recommended medical treatment for her allegedly disabling pain. Since the claimant has already received treatments at a free clinic

6

> in Gardena, she cannot attribute her refusal to pursue recommended treatment to financial concerns.

[AR 25].

The record reveals that Dr. Hunt initially prescribed a 12- to 14- week course of physical therapy, and medications consisting of Prilosec, Skelaxin (for relief of discomfort associated with acute musculoskeletal conditions), Celebrex (a nonsteroidal anti-inflammatory drug) and Vicodin, a narcotic pain reliever.[8] [AR 115, 143]. By October 2001, plaintiff had graduated from physical therapy to a home exercise program. She was wearing her prescribed wrist and elbow braces, continued to take her medication, and used an "H-wave" machine, which Dr. Hunt also had prescribed.[9] [AR 84, 115, 127-128]. Dr. Hunt referred plaintiff to a pain management specialist, Dr. Charbonnet, who recommended a trial of epidural injections. [AR 102]. Plaintiff agreed to be scheduled for an epidural [AR 102], but when she went to see Dr. Hunt in October 2001, he noted that she was reluctant to have the injections because she was afraid. [AR 127-128]. Dr. Hunt said that plaintiff was more interested in having an epidural injection after he demonstrated her positive straight-leg raising test to her. [AR 128]. He tried to persuade her to accept a shoulder injection that day, but she said she preferred to wait and try the epidural first. [AR 128]. Dr. Hunt also advised acupuncture, but he noted that "scheduling problems" prevented her from getting acupuncture. [AR 124, 125-126, 128].

In November 2001, Dr. Hunt noted that the pain management doctors had proposed administering cervical and lumbar injections when he had referred plaintiff for lumbar injections only, and that no injections had been administered. [AR 102, 124]. In February 2002, Dr. Hunt remarked that plaintiff had not undergone pain management therapies, and that she "was reluctant to try pain management, because she says that everything is being placed as a lien against her." [AR 120]. Dr. Hunt concluded that plaintiff had "improved somewhat, as she is

---

[8] See Physicians' Desk Reference Skelaxin, Celebrex, Vicodin (Thomson PDR 2005).

[9] An "H-wave machine" is a machine which delivers transcutaneous electrical stimulation for pain relief. See http://www.mie-uk.com/hwave.

7

having less radicular pain down her arm," that she "should not try an epidural at this point" but should continue her home exercises and medication. [AR 120]. He again advised a shoulder injection, but plaintiff declined. [AR 120]. As of April 23, 2002, Dr. Hunt found plaintiff's condition to be permanent and stationary.

After plaintiff's workers' compensation medical coverage terminated, she sought treatment at Los Angeles County Harbor UCLA Medical Center and was referred for follow-up care to a free clinic, where her medications were refilled. [AR 170-171, 194, 207, 210-211, 207].

During the hearing, plaintiff elected to proceed without counsel or a lay representative. [AR 192-195]. She testified that Dr. Hunt at one point had recommended surgery on her wrist (a left carpal tunnel release [AR 124-125, 216]), but she said that "when I went to pain management, they were telling me what could happen, what couldn't happen and they didn't think it would ... correct my problems, so I refused.... I talked to Dr. Valdez at the pain management, he told me that they could do it, but they're not guaranteeing me this is going to correct anything. " [AR 215]. Dr. Hunt's notes also indicate that plaintiff had asked him to explain the relationship between the carpal tunnel release and her neck and shoulder symptoms. [AR 124-125]. Plaintiff also testified that the insurer declined to authorize the recommended surgery. [AR 216].

The ALJ relied heavily on plaintiff's decision to decline epidural injections and acupuncture to discredit her subjective complaints. Dr. Hunt, however, wrote that acupuncture did not occur due to "scheduling problems" rather than plaintiff's refusal to undergo it. After initially agreeing to an epidural trial, plaintiff subsequently expressed her fears of the injections to Dr. Hunt. He said nothing to suggest that her decision to decline treatment undermined the reliability of her complaints. Indeed, he continued to maintain that she needed pain therapy and also was a candidate for carpal tunnel release surgery. Although she did not undergo the epidural trial, plaintiff remained compliant with her prescribed medication, physical therapy, braces, home exercises, and use of the H-wave machine. Later, plaintiff told Dr. Hunt that she was reluctant to try pain management because the cost of treatment would result in a lien

against her. [AR 120].

The ALJ did not inquire into plaintiff's reasons for not undergoing the epidural injections or acupuncture during the hearing. He did not ask her about the "scheduling problems" Dr. Hunt mentioned, the fears plaintiff expressed to Dr. Hunt about the epidural injections, the issue of the liens for the cost of pain management. The ALJ nonetheless concluded that those were invalid or unconvincing reasons for plaintiff's treatment decisions and reflected poorly on the credibility of her subjective complaints. The ALJ also said that since plaintiff was receiving treatment at the free clinic, she could not attribute her "refusal to pursue recommended treatment to financial concerns," but there is nothing to show that plaintiff refused treatment she actually was offered by Harbor UCLA or by the South Bay Free Clinic. [See AR 170-184, 207-211]. She obtained prescription medication from those providers (including Vioxx, Vicodin, Protonix for symptoms of gastroesophageal reflux disease, and Neurontin for neuralgia) and her doctors requested referral to a pain clinic, but the request was denied for unspecified reasons. [AR 171, 174].

The ALJ erred in using plaintiff's decision not to undergo epidural injections and acupuncture to reject her subjective allegations without conducting an appropriate inquiry during the hearing. See Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (explaining that when a claimant is not represented by counsel, the ALJ's duty is "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.")(quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)); Mendoza v. Apfel, 88 F.Supp.2d 1108, 1114 (C.D. Cal. 2000)(holding that the ALJ did not adequate develop the record and improperly found the claimant's symptoms not credible where the ALJ noted that the claimant had used two different Social Security numbers, one of which was false, but the ALJ "never sought clarification from" the claimant about use of the two numbers)(citing Cloutier v. Apfel, 70 F.Supp.2d 271, 278 (W.D.N.Y.1999) (holding that the ALJ's adverse credibility finding is without support when based, in part, on "ALJ's failure to try to resolve any alleged inconsistencies")); see also Nichols v. Califano, 556 F.2d 931, 933 (9th

Cir. 1977) ("A claimant under a disability need not submit to all treatment, no matter how painful, dangerous, or uncertain of success, merely because one physician believes that a remedy may be effective.... A patient may be acting reasonably in refusing surgery that is painful or dangerous.").

The ALJ also drew a negative inference from what little he knew about plaintiff's workers' compensation settlement. During the hearing, plaintiff testified that she settled the claim for $30,000 and netted about $19,000, but she did not offer any other testimony about the settlement, and the ALJ did not ask her about the circumstances surrounding it. [AR 206]. The ALJ conjectured that plaintiff had settled her worker's compensation claim

> presumably with an advice of an attorney as she was represented. Judging from the medical records, her employer most likely would not have raised a causation defense, yet [plaintiff] chose to accept what I would safely characterize as a grossly inadequate settlement offer in comparison to her allegedly disabling pain and functional limitations. These facts do not serve to bolster [plaintiff's] credibility.

[AR 25]. If the ALJ had adduced the relevant "facts" they might have detracted from plaintiff's credibility, but in place of facts he relied on speculation unsupported by evidence in the record. See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (stating that "speculation on the part of the ALJ do[es] not amount to substantial evidence"); see also Winfrey v. Chater, 92 F.3d 1017, 1020-21 (10th Cir. 1996)(holding that the ALJ's adverse credibility finding was not supported by substantial evidence where the ALJ based a determination that plaintiff had an incentive not to work "entirely on the ALJ's speculation that the terms of plaintiff's pension might prohibit plaintiff from working"); Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996)(observing that the ALJ "made a number of unfounded sociological speculations which bespeak a lack of imagination concerning the lives of many of the people who apply for social security disability benefits").

///

///

**Conclusion**

The ALJ did not satisfy his burden to develop the record fully and fairly and to articulate specific, legitimate reasons based on substantial evidence for rejecting plaintiff's testimony regarding her subjective symptoms and limitations. Because it is not absolutely clear from the record that the ALJ must credit plaintiff's testimony as true and that plaintiff is entitled to benefits, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings and a new hearing decision. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (stating that the court has discretion not to require the "crediting as true" of testimony rejected for insufficient reasons); Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(reversing and remanding for further proceedings where the ALJ did not properly reject the claimant's subjective complaints and other evidence but several "outstanding issues" remain to be resolved, including whether the ALJ "must credit her testimony as true," and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

**IT IS SO ORDERED.**

DATED: October 19, 2005

/S/
_____
ANDREW J. WISTRICH
United States Magistrate Judge